**NOT FOR PUBLICATION**

| | |
|---|---|
| JOSEPH FALTAOUS on behalf of himself and others similarly situated, | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY |
| Plaintiff, | |
| -vs- | Hon. Jose L. Linares Civil Action No. 07-1572 (JLL) |
| JOHNSON AND JOHNSON, and ABC Corporations 1 through 100 (fictitious names), | REPORT AND RECOMMENDATION |
| Defendants. | |

## INTRODUCTION

Before the Court is plaintiff Joseph Faltaous's motion to remand this case to state court. (Docket Entry No. 7.)  The motion is decided on the papers.[1]  Fed. R. Civ. P. 78.  For the reasons set forth below, it is respectfully recommended that plaintiff's motion be **denied**.

## BACKGROUND

This is a putative class action for overtime benefits under New Jersey law on behalf of certain employees of Johnson & Johnson ("defendant") and related corporations.  Plaintiff Faltaous is a resident of the State of New Jersey.  (Am. Compl. ¶ 4, attached as Ex. A to Def.'s Notice of Removal.) Janssen Pharmaceutica, Inc., a wholly-owned subsidiary of defendant, employed plaintiff as a Professional Sales Representative and Senior Sales Representative from October 2002 until July 20, 2006.  (Am. Compl. ¶ 4; Notice of Removal ¶ 11.)  Defendant is a Delaware corporation which maintains its principal place of business in New Jersey.  (Notice of Removal ¶ 13.)

---

[1] This includes sur-replies from each side.  (Docket Entry Nos. 14-15.)

On February 23, 2007, plaintiff filed an amended complaint in the Superior Court of New Jersey, Middlesex County against defendant and up to one hundred (100) unnamed corporations referred to by fictitious names.  The complaint alleges violations of the New Jersey State Wage and Hour Law ("NJWHL"), N.J.S.A. 34:11-56a, et seq.

On April 4, 2007, defendant removed the case to this Court pursuant to 28 U.S.C. § 1441 et seq. and the Class Action Fairness Act ("CAFA"), Pub L. No. 109-2, 119 Stat 4 (2005), codified at 28 U.S.C. §§ 1332, 1446 and 1453.  (Docket Entry No. 1.)  On April 27, 2007, plaintiff filed this motion to remand.[2]

**The Complaint**

The complaint alleges that plaintiff and the putative class are improperly classified as exempt from the overtime requirements of the NJWHL, and are regularly denied overtime pay for hours worked in excess of forty (40) per workweek.  (Am. Compl. ¶¶ 9-12.)  For this motion, the most pertinent allegations are as follows.

First, the putative class is defined as:

> All persons who have been, are or in the future will be employed by any of the Defendants in New Jersey in any sales representative position and/or in job whose title is or was referred to by any of the following titles, and employees who performed substantially the same work as employees with those titles (discovery may reveal additional titles and employees that should be included):

_____

[2] Also pending in this district is Fataous [sic] v. Johnson & Johnson, Civ. A. No. 06-4787 (JLL), which contains substantially similar overtime violation allegations under the Fair Labor Standards Act (the "FLSA Case").  On April 6, 2007, defendant filed: (1) a motion in the FLSA Case to consolidate the two cases; and (2) a motion to dismiss this case based upon, among other reasons, its interpretation of the FLSA's "opt-in" requirement.  (Docket Entry Nos. 2-3.)  These motions were withdrawn without prejudice pending resolution of defendant's motion to remand.  (Docket Entry No. 16.)

> (a) Professional Sales Representative;
> (b) Senior Sales Representative;
> (c) Executive Sales Representative
> (d) Senior Executive Sales Representative;

(Id. at ¶ 2.)

Second, the putative class, "upon information and belief, [exceeds] two hundred (200) members . . . ." (Id. at ¶ 15.)

Third, defendants are described as "the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants . . . ." (Id. at ¶ 6.)

Fourth, the complained of conduct occurred "[t]hroughout the statute of limitations period covered by these claims." (Id. at ¶ 10.)

Fifth, the ad damnum clause demands:

> A.     A declaratory judgment that the practices complained of herein are unlawful under [N.J.S.A. 34:11-56a, et seq.];
> . . .
> D.     An award of damages, according to proof, to be paid by Defendant;
> E.     Penalties available under applicable law;
> F.     Costs of action incurred herein, including expert fees;
> G.     Attorneys' fees, including fees pursuant to [N.J.S.A. 34:11-56a, et seq.] and other applicable statutes;
> H.     Pre-Judgment and post judgment interest, as provided by law; and
> I.     Such other and further legal and equitable relief as this Court deems necessary, just and proper.

(Id. at p. 8.)

## Plaintiff's Motion to Remand

Plaintiff's motion to remand initially argued that defendant's removal of this case was improper for three reasons: (1) that defendant failed to meet its burden of proving CAFA's

$5,000,000 aggregate amount in controversy requirement; (2) that defendant failed to satisfy its burden of proving minimal diversity of citizenship; and (3) even assuming defendant had met its burden the case should be remanded on the basis of CAFA's "local controversy" exception.

Following opposition to his motion to remand, plaintiff conceded all but one issue — plaintiff continues to argue that defendant has failed to meet its burden of proving the requisite amount in controversy.  (Pl.'s Reply Br. at  preliminary statement, 1, 16.)  That is the sole issue addressed in this Report.

## DISCUSSION

### A.    The Class Action Fairness Act

Enacted on February 18, 2005, CAFA modifies 28 U.S.C. §1332 to provide federal jurisdiction over any class action with at least 100 members, as follows:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which–
>
> (A) any member of a class of plaintiffs is a citizen of a State different from any defendant

28 U.S.C. § 1332 (d)(2)(A).

The jurisdictional provisions of CAFA have spurred controversy and comment.  See, e.g., Steven M. Puiszis, Developing Trends with The Class Action Fairness Act of 2005, 40 J. Marshall L. Rev. 115 (2006); Stephen J. Shapiro, Applying the Jurisdictional Provisions of The Class Action Fairness Act of 2005: In Search for a Sensible Judicial Approach, 59 Baylor L. Rev. 77 (2007); Robert E. Bartkus, Defendant's Removal Burden: CAFA Defendants Must Prove Minimum Amount in Controversy For Removal, 187 N.J.L.J. 584 (2007).  Indeed, there are important differences

4

among the district and circuit courts that have interpreted CAFA.

**B.      Morgan v. Gay and Defendant's Burden**

In Morgan v. Gay, 471 F.3d 469 (3d Cir. 2006), cert. denied, _____ S. Ct. _____, No. 06-1471, 2007 WL 1339833 (October 1, 2007), the only Third Circuit case addressing CAFA, the Court of Appeals discussed the burden of proving federal jurisdiction under CAFA.  Morgan holds that a defendant removing a case to federal court under CAFA bears the burden of establishing federal subject matter jurisdiction "to a legal certainty." 471 F.3d at 474.

Despite the Third Circuit's statement in Morgan, the parties do not agree on the nature of the defendant's burden. Relying on the plain language of Morgan, plaintiff argues that defendant must establish the $5,000,000 minimum amount in controversy to a "legal certainty."  (Pl.'s Br. 8.) According to defendant, this legal standard "applies only in cases where the plaintiff's claims are explicitly limited to an amount below the jurisdictional minimum." (Def.'s Br. 8) (emphasis in original).  Defendant argues that because plaintiff has not pled an amount below the jurisdictional threshold, unlike the plaintiff in Morgan, a different standard (most likely a "preponderance of the evidence" standard) applies.  (Id. at pp. 9-10.)  In support of its theory, defendant relies on its interpretation of pre-Morgan Third Circuit precedent, as well as decisions from other circuit courts of appeals.  (Id.)  Although defendant's burden argument has some legal and logical support,[3] the Court finds it unpersuasive.  However, since this issue is complex and confusing it merits further analysis.

_____

[3]  For example, on October 9, 2007, Ninth Circuit Judge Diarmuid F. O'Scannlain filed a specially concurring opinion that stated  "[p]lacing such burden on the party seeking to assert rather than defeat federal jurisdiction-places too high a barrier in the path of defendants seeking to remove a case which it believes belongs in federal court." Guglielmino v. McKee Foods Corp., _____ F.3d _____, 2007 WL 2916193, at *5 (9th Cir. October 9, 2007).

C.      **The Legal Certainty Test**

The Third Circuit comprehensively addressed the appropriate standard to determine the amount in controversy in Samuel-Bassett v. Kia Motors Corp., 357 F.3d 392 (3d Cir. 2004). Samuel-Bassett made clear that a party seeking to litigate in federal court bears the burden of establishing "at all stages of the litigation the case is properly before the federal court."  357 F.3d at 396.  Samuel-Bassett also provided express guidance to the district courts on the "articulation of the standard to be applied and the extent of the burden to meet that requirement[.]"  Id.

Samuel-Bassett considered the different standards then being used by district courts in this Circuit to determine the jurisdictional amount.  These included, among others, "preponderance of the evidence," "reasonable probability," "legal certainty," and "inverted legal certainty."[4]  Samuel-Bassett, 357 F.3d at 396-97.  The Third Circuit held that a preponderance of the evidence standard would apply to "disputes over factual matters," and once those disputes were resolved, "the District Courts [should] adhere to the 'legal certainty' test cited in such cases as Meritcare [v. St. Paul Mercury Ins. Co.], 166 F.3d 214 (3d Cir. 1999); Packard [v. Provident Nat. Bank], 994 F.2d 1039 (3d Cir. 1993); Bloom v. Barry, 755 F.2d 356 (3d Cir. 1985); and Nelson v. Keefer, 451 F.2d 289 (3d Cir. 1971)."  Samuel-Bassett, 357 F.3d at 398.

The legal certainty test referred to in Meritcare, Packard, Bloom, and Nelson, is the test set forth by the Supreme Court in St. Paul Mercury Indemnity Co. v. Red Cab, 303 U.S. 283 (1938).

---

[4] Samuel-Bassett rejected the standard proposed by defendant by referencing Orndorff v. All State Insurance, 896 F. Supp. 173 (M.D. Pa. 1995).  See 357 F.3d at 397.  In Orndorff, the complaint did not seek a specific amount.  See 896 F. Supp. at 175.  The court required defendant to establish the amount in controversy by a preponderance of the evidence, which if done would require the plaintiff to show to a legal certainty that his claim was really for less than the jurisdictional amount. Id.

See Meritcare, 166 F.3d at 217; Packard, 994 F.2d at 1045-46; Bloom, 755 F.2d at 358; Nelson, 451 F.2d at 291.

Red Cab's "legal certainty" test is as follows:

> [I]f, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed, or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed.

303 U.S. at 289.

In addition to adopting the Red Cab legal certainty test quoted above, Samuel-Bassett requires a defendant to "show to a legal certainty that the amount in controversy exceeds the statutory minimum[.]" 357 F.3d at 398.  The standard in Samuel-Bassett can be read to differ from the standard in Red Cab.  Specifically, Red Cab does not expressly require a defendant to prove, to a legal certainty, that the plaintiff's claim exceeds the amount in controversy requirement.  See Valley v. State Farm Fire & Cas. Co., ____ F. Supp. 2d _____, No. 06-4351, 2006 WL 3718007, at *3 (E.D. Pa. December 12, 2006) (finding that Red Cab does not require a defendant to prove to a legal certainty that a plaintiff can recover the jurisdictional minimum).

Under the Red Cab test, "a case must be dismissed or remanded if it appears to a legal certainty that the plaintiff **cannot** recover more than the jurisdictional amount of $75,000.  The rule does not require the removing defendant to prove to a legal certainty the plaintiff **can** recover $75,000 – a substantially different standard."[5]  Valley, 2006 WL 3718007, at *3; see also Nyugen

---

[5] One commentator cited in Samuel-Bassett confirms this interpretation of Red Cab's legal certainty test.  See Alice M. Noble-Allgire, Removal of Diversity Actions When the Amount in Controversy Cannot be Determined from the Face of Plaintiff's Complaint:  The Need for Judicial

v. Titus, No. 07-758, 2007 WL 2461815, at *1 (E.D. Pa. August 29, 2007) ("The Red Cab legal-certainty test requires remand only when it is legally impossible for the plaintiff to recover an amount in excess of the statutory minimum.").

The arguable difference between Red Cab and Samuel-Bassett has led to some conflicting opinions.  Compare Valley, 2006 WL 3718007, at *5-6 (concluding that Samuel-Bassett does not stand for the proposition that a removing defendant must prove the jurisdictional amount to a legal certainty) (emphasis added), and Yocham v. Novartis Pharmaceuticals Corp., No. 07-1810, 2007 WL 2318493, at *1-2 (D.N.J. August 13, 2007) ("by reviewing the Complaint, the Court cannot find to a legal certainty that the amount in controversy does not exceed $75,000"), with Dent v. Cingular Wireless, LLC, No. 07-552, 2007 WL 1797653, at *7 (D.N.J. June 20, 2007) (defendant must show, to a legal certainty, that the amount in controversy exceeds the jurisdictional threshold), Lamond v. Pepsico, Inc., No. 06-3043, 2007 WL 1695401, at *3-5 (D.N.J. June 8, 2007) (noting "confusion" regarding the nature of defendant's burden, and concluding that the Defendants must prove the requisite amount in controversy, $5 million, to a legal certainty"), and Brownstein v. Allstate Ins. Co., No. 06-4759, 2006 U.S. Dist. LEXIS 94577 (E.D. Pa. November 16, 2006) (defendant must show that amount in controversy is met to a legal certainty).

Expressly relying on Samuel-Bassett, Morgan definitively concludes that it is a removing defendant's burden to "prove to a legal certainty that the amount in controversy exceeds the statutory threshold." 471 F.3d at 474.  Following Morgan and Samuel-Bassett, most courts in this district have required a removing defendant establish the amount in controversy to a legal certainty, even

---

and Statutory Reform to Preserve Defendant's Equal Access to Federal Courts, 62 Mo. L. Rev. 681, 754 (1997) (Under Red Cab the party asserting federal jurisdiction  bears the burden of establishing that it is not legally or factually impossible to recover in excess of the jurisdictional threshold.).

when then complaint is ambiguous on the amount of damages sought.[6]  See Dent, 2007 WL 1797653, at *7; Lamond, 2007 WL 1695401, at *3-5 (CAFA case).

At least one court has concluded that Morgan resolved any conflict over the appropriate legal standard applicable to the amount in controversy calculation in a removal case.  See Bailey v. J.B. Hunt Transport, Inc., No. 06-240, 2007 WL 764286, at *4 (E.D. Pa. March 8, 2007).  Other courts have continued to state that confusion exists over the applicable standard.  See Nyguen, 2007 WL 2461815, at *1 ("[T]here is some disagreement in this Circuit over the standard to be applied when considering the amount in controversy requirement in the removal context."); Avant v. J.C. Penny, No. 07-1997, 2007 WL 1791621, at *2 (D.N.J. June 19, 2007) (noting disagreement among the district courts and stating that when the complaint is silent the Third Circuit has not adopted a particular approach).

Despite the confusion noted above, this Court finds that Morgan and Samuel-Bassett

---

[6] In the Second, Fifth, Sixth, Seventh, Eighth, Ninth and Eleventh Circuits a defendant need not prove the amount in controversy to a "legal certainty" when a complaint is silent on the amount of damages sought.  See, e.g., Lowery v. Alabama Power Co., 483 F.3d 1184, 1208-09 (11th Cir. 2007) (CAFA case) ("We have held that, in the removal context, where damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence."); Lowdermilk v. U.S. Bank National Assoc., 479 F.3d 994, 998 (9th Cir. 2007) (CAFA case) ("[W]hen the plaintiff fails to plead a specific amount of damages, the defendant seeking removal must prove by a preponderance of the evidence that the amount in controversy requirement is met."); The Home Depot, Inc. v. Rickher, No. 06-8006, 2006 WL 1727749, at *1 (7th Cir. May 22, 2006) (CAFA case) (stating, in the context of a removal case where the complaint did not request a specific amount of damages, "To meet the amount-in-controversy requirement, 'the removing litigant must show a reasonable probability that the stakes exceed the minimum.' . . . 'Once the proponent of jurisdiction has set out the amount in controversy, only a legal certainty that the judgment is for less forecloses federal jurisdiction.'" (quoting Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005))); In re Minn. Mut. Life Ins. Co. Sales Practice Litigation, 346 F.3d 830, 834 (8th Cir. 2003); Hayes v. Equitable Life Ins. Co., 266 F.3d 560, 572 (6th Cir. 2001); Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000); De Aguilar v. Boeing Co., 47 F.3d 1404, 1412 (5th Cir. 1995).  As stated previously, Samuel-Bassett considered and declined to adopt a preponderance based standard.  See 357 F.3d at 397-98.

conclusively require a removing CAFA defendant prove to a legal certainty that the plaintiff's claim exceeds $5,000,000.

**D.      What Does Legal Certainty Mean**

Having concluded that defendant must prove the amount in controversy to a "legal certainty," the question remains what does "legal certainty" mean.   Neither party has cited authority that addresses the issue.   One court in this district has found that "[a]lthough the precise meaning of legal certainty is not immediately apparent, it is something less than absolute certainty and more stringent than a preponderance of the evidence." Faracchao v. Harrah's Entertainment, Inc., No. 06-1364, 2006 WL 2096076, at *2 n.1 (D.N.J. July 27, 2006); see also United B. International Corp. v. Maher Terminals, Inc., No. 04-2116, 2006 WL 1478850, at *1 (D.N.J. May 26, 2006) ("[L]egal certainty does not mean that there must be absolute certainty." (citing Nelson, 451 F.2d at 2[93] n.6)).

Other courts have defined "legal certainty" in different ways.  See, e.g., Scherer v. Equitable Life Assur. Soc'y of the United States, 347 F.3d 394, 397 (2d Cir. 2003) ("[t]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim"); Pro-Onsite Technologies v. Jefferson County, KY Clerk's Office, No. 04-452, 2005 WL 2000841, at *2 (W.D. Ky. August 19, 2005) ("The Court in [Tullos v. Corely, 337 F.2d 884, 887-88 (6th Cir. 1964)] defined legal certainty as a probability that the value of the matter in controversy exceeds the jurisdictional amount.").

The continuing uncertainty regarding the meaning and application of legal certainty was voiced in a Court of Appeals case decided just two days ago:

> [I]t is unclear how the legal certainty burden is to be applied against a defendant seeking to establish federal jurisdiction.  What type of proof can satisfy such a burden? . . . [W]hat type of proof suffices to reach the necessary quantum of a legal certainty?  By inverting the

> [Red Cab] test and applying it against a party seeking federal
> jurisdiction, we raise these practical problems to which there are no
> easy answers.

Guglielmino v. McKee Foods Corp., ____ F.3d ____, 2007 WL 2916193, at *8 (9th Cir. October 9, 2007) (O'Scannlain, J., specially concurring).

Ultimately, despite the sturm and drang over the "legal certainty" test, its practical significance may be questioned in light of Samuel-Bassett's observation that "[m]any of the variations [legal certainty, preponderance of the evidence, etc.,] are purely semantical and **we have found no case where the result would have been different had one of the variations described been used**. However, we think it would be helpful if consistent language were used by the District Courts in this Circuit." 357 F.3d at 397 (emphasis added).

### E.    Evidence Considered to Determine the Amount in Controversy

In cases removed to federal court, "determining the amount in controversy begins with a reading of the complaint filed in state court." Id. at 398. Plaintiff's amended complaint is silent on the specific amount of damages sought.[7] Therefore, to determine the amount in controversy, the Court will consider the complaint, the notice of removal, and the submissions related to plaintiff's motion to remand. See USX Corp. v. Adriatic Ins. Co., 345 F.3d 190, 205 n.12 (3d Cir. 2001) (stating that jurisdictional facts required to support removal may be found in later-filed affidavits); Pollock v. Trustmark Ins. Co., 367 F. Supp. 2d 293, 297 (E.D.N.Y. 2005) ("Where there is no dollar amount alleged in the complaint and the action is in federal court by a notice of removal . . . . The

---

[7] Most cases removed from New Jersey state courts will be silent on the quantum of damages sought. New Jersey Court Rules mandate that complaints seeking unliquidated damages demand damages generally without specifying the amount. See N.J. Ct. R. 4:5-2; Lipsitt v. Leonard, 64 N.J. 276, 281 n.1 (N.J. 1974).

Court first looks to the complaint, and then to the moving papers, and then to anything else." (citing United Food & Comm. Workers Union v. CenterMark Properties Meriden Square Inc., 30 F.3d 298, 305 (2d Cir. 1994)).

The ultimate determination regarding the amount in controversy requires a "reasonable reading of the value of the rights being litigated." Angus v. Shiley, Inc., 989 F.2d 142, 146 (3d Cir. 1993). In conducting an amount in controversy analysis, "[t]he legal sufficiency of the claims and the soundness of the plaintiff's legal theory are not relevant to the jurisdictional question." Horn & Hardart Systems, LLC v. Hunter, No. 04-5117, 2005 WL 1522266, at *2 (D.N.J. June 27, 2005) (citing Suber v. Chrysler Corp., 104 F.3d 578, 583 (3d Cir. 1997)). Against this backdrop, the Court will consider the evidence.

**F.     Calculating the Amount in Controversy**

Under CAFA, the claims of all plaintiffs and putative class members are aggregated to determine if the amount in controversy exceeds the jurisdictional threshold of $5,000,000. The complaint seeks the following categories of damages: unpaid overtime, penalties under applicable law and attorneys' fees. To attempt to compute the amount in dispute, the parties address the following variables: (i) the number of class members; (ii) the liability period; (iii) hours of overtime allegedly worked; (iv) the monetary rate to be applied to the overtime hours; (v) statutory penalties and (vi) attorneys' fees.

The parties have offered several competing computations of the amount in controversy, which are discussed below. After carefully considering same, this Court concludes that defendant has established the amount in controversy exceeds $5,000,000 to a legal certainty.

In its notice of removal, defendant calculates the amount in controversy by using a regular

12

overtime rate of one and one-half times plaintiff's average hourly pay ($93.98), three overtime hours a week, the minimum number of class members pled in the amended complaint (200), the statute of limitations period (2 years (104 weeks)), as well as plaintiff's claims for attorneys' fees and penalties.  (Notice of Removal ¶¶ 23-25.)  Using this calculation, defendant avers that the claim for unpaid overtime <u>alone</u> places $5,864,352 ($93.98 x 3 x 200 x 104) in controversy.  As such, defendant contends that CAFA's jurisdictional threshold is met without attorneys' fees and civil penalties.  (<u>Id.</u> at ¶ 25.)

Plaintiff does not openly state or stipulate that the amount in controversy is less than $5,000,000.[8]  Rather, plaintiff's motion provides what is termed "a more realistic example" of the amount in controversy.  (Pl.'s Br. 11.)  Plaintiff's calculation applies the same three hours of overtime a week, class members (200), and liability period (2 years) as defendant's notice of removal.  However, plaintiff uses an average salary of $80,000 per class member (the hourly equivalent of $35.78) and uses a different method of calculating overtime.  (<u>Id.</u>)  This calculation reflects approximately $1.1 million exclusive of attorneys' fees and penalties.  (<u>Id.</u>)  Asserting that attorneys' fees and penalties cannot account for the remainder, plaintiff argues that defendant has failed to meet its burden.

---

[8]  The Court notes that plaintiff could have expressly stipulated that his claim falls below the jurisdictional threshold.  <u>See</u> <u>Morgan</u>, 471 F.3d at 474.  Plaintiff has chosen not to do so.  Some courts have held that the failure to stipulate to an amount below the jurisdictional threshold results in an inference that the plaintiff believes his claim is worth more than the jurisdictional amount.  <u>See</u> <u>Oshana v. Coca-Cola Co.</u>, 472 F.3d 506, 511-12 (7th Cir. 2006); <u>Workman v. United Parcel Service, Inc.</u>, 234 F.3d 998, 1000 (7th Cir. 2000).  The Court draws no such inference here.  However, plaintiff's failure to stipulate that his claim falls below $5 million further distinguishes the facts in <u>Morgan</u>.

a.    **Class Members**

The complaint alleges the putative class exceeds 200 individuals. (Am. Compl. ¶ 5.) Defendant submits the detailed declaration of its Senior EO Consultant, Ms. Linda Bright, which establishes that more than 300 individuals were employed in exempt sales positions and the average salary of those employees ($74,000). (Bright Decl. Exs. A-C.)   These individuals would fall within the scope of the putative class as defined by the amended complaint.  (See Am. Compl. ¶ 2.)

Despite the allegation in the complaint of at least 200 class members, in his reply brief, plaintiff contends for the first time that the putative class is restricted only to "pharmaceutical representatives whose task it is to visit physicians in order to influence their prescribing habits." (Pl.'s Reply Br. 4.)  Plaintiff's attempted recharacterization of the putative class is not appropriate. The complaint defines the class as "[a]ll persons who have been, are or in the future will be employed by **any** of the Defendants in New Jersey in **any** sales representative position and/or . . . [defined as four separate categories]." (Am. Compl. ¶ 2) (emphasis added).  Plaintiff shouldn't be able to move the target now.  The attempt to change the definition of the putative class is akin to amending the complaint during the briefing of a motion, which is not permitted. Cf. Commv. of Pa. ex. rel Zimmerman, 836 F.2d 173, 181 (3d Cir. 1988) (party may not amend complaint in brief opposing a motion to dismiss); Gully v. Elizabeth City Police Dept., No. 04-4445, 2006 WL 3694588, at *3 n.8 (D.N.J. December 13, 2006) (Linares, J.) (same in the context of a summary judgment motion).

The complaint is the seminal document in a jurisdiction analysis.  Plaintiff's complaint broadly defines the proposed class and plaintiff cannot change it willy nilly.  When "[r]uling on whether an action must be remanded to the state court . . . the district court must consider the

14

complaint at the time the complaint was removed . . . . In so ruling the district court must assume as true all factual allegations of complaint . . . ." Steel Valley Authority v. Union Switch &  Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987).

To the extent there is a fact dispute about the class size, the Court is satisfied that defendant has established its allegation of 300 putative class members and their average salary by a preponderance of the evidence.  McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

### b.   Amount of Overtime Hours

Defendant's notice of removal supposes that plaintiff and the members of the putative class worked three (3) hours of overtime per week.  (Notice of Removal ¶ 25.)  Plaintiff has not challenged this number at any point.

This number is necessarily speculative.  The Court is mindful of Morgan's  disapproval of reliance on "inconclusive assumptions."  471 F.3d 475.  However, an allowance must be made for this aspect of an overtime claim.  This is because the number of overtime hours worked is presumably not known by defendant.  An employer's alleged failure to keep overtime records is a distinct element of plaintiff's claim.  If proven, the failure to keep overtime records for non-exempt employees is a violation of the NJWHL, which without further proof subjects a violator to the statutory penalties sought in plaintiff's complaint.

To explain further, plaintiff has alleged that defendant has failed to keep the overtime records required by the NJWHL, "including records sufficient to accurately determine the wages and hours of employment pertaining to plaintiffs and other Class members." (Am. Compl. ¶ 13.)  For purposes of this motion, the Court must assume that defendants have failed to maintain such records.

15

See Steel Valley Authority, 809 F.2d at 1010; Communications Finance Corp. v. Level 3 Communications, LLC, 483 F. Supp. 2d 380, 382 n.3 (D. Del. 2007).  If defendant was required to produce these records and was unable to do so, it would conclusively establish allegations in the amended complaint.  Defendant need not concede aspects of the complaint in order to prove federal jurisdiction.  See Samuel-Bassett,  357 F.3d at 398 n.3  ("A pretrial ruling on jurisdictional facts should not be made if it constitutes a decision on the merits.").

In this type of overtime case, the number of overtime hours allegedly worked can only be estimated.  Courts have held that "when determining whether a plaintiff has established a prima facie case under the NJWHL . . . a plaintiff need not prove damages with precision where it is impractical or impossible to do so." Genarie v. PRD Management, Inc., No. 04-2082, 2006 WL 436733, at *18 (D.N.J. February 17, 2006) (citing Mosley v. Femina Fashions, Inc., 356 N.J. Super. 118, 128 (N.J. Super. 2002)).  "Damages need only be proved with such certainty as the nature of the case may permit, laying a foundation which will enable the trier of facts to make a fair and reasonable estimate of damages." Id. (emphasis added).  Because certain cases may involve claims incapable of precise definition, "[w]hen the total amount of actual damages cannot be verified, speculative evidence may be used to estimate [the amount in controversy]."  Horn, 2005 WL 1522266, at *2; see also Suber, 104 F.3d at 586.

Plaintiff's amended complaint places no limit on the amount of overtime pay sought, and alleges that the class members "regularly" worked overtime hours.  (Am. Compl. ¶ 10.)  The Court concludes that three (3) hours per week is a reasonable reading of the rights being litigated.  See Angus, 989 F.2d at 146.  Three hours of overtime a week per class member equates to approximately thirty-six (36) minutes per day of unpaid overtime.  This number is also reasonable in light of

allegations made by similarly situated plaintiffs in other cases (against certain of the same defendants) for more than ten (10) hours of unpaid overtime per week.  (Declaration of Stephen F. Payerle, Esq., Exs. B-D.)  Therefore, the Court will accept the three hour per week number the parties themselves have not disputed.

### c.   **Method of Calculation**

The amended complaint expressly places the method of calculating his claim for unpaid overtime in controversy.  (Am. Compl. 21(g).)  Defendant's notice of removal applies a standard workweek method to its calculation.  This well-established method of calculation treats the employee's salary as pay for a forty (40) hour workweek and provides for recovery of overtime pay at one and one-half times the hourly rate.  (Notice of Removal ¶ 25.)  In his motion to remand, plaintiff suggests using the fluctuating workweek method although he does not concede that it applies.  (Pl.'s Br. 10 n.5.)  According to plaintiff, this method requires dividing the yearly salary by the actual hours worked, including overtime hours, the employee is then paid at regular rate for all hours.  The employee is then owed one-half hour for each hour worked in excess of forty (40).  Applying the standard workweek method will generally result in a higher amount of overtime liability.[9]  Neither party has cited authority that conclusively resolves the issue.

The correct overtime methodology is not for the Court to decide on the present motion.  The "legal certainty" standard requires only "minimal scrutiny of the plaintiff's claims."  Suber, 104 F.3d at 583.  The possibility that plaintiff could recover damages measured by a method other than the

---

[9] As contemplated by Samuel-Bassett, the Court is faced with the "bizarre" result that following this motion, plaintiff is likely to argue that the standard workweek method applies while defendant will likely argue the opposite.  The writing is on the wall as both parties have refused to concede that the method they currently proffer would apply to the merits of the case.  (Notice of Removal ¶ 25 n.3; Pl.'s Br. 10 n.5.)

standard method does not defeat removal.  See Horn, 2005 WL 1522266, at *2 n.2 (the court need

not determine whether a "methodology is reliable").

### d.   Liability Period

The notice of removal measures plaintiff's damages over 104 weeks (two years).  (Notice of

Removal ¶ 25.)  This is logical given the two year statute of limitations applicable to the cause of

action.  See N.J.S.A.  34:11-56a25.1.  However, limiting plaintiff's damages to the two years prior

to the filing of the suit is too restrictive.  The amended complaint seeks to recover unpaid overtime

due after the filing of the amended complaint.  (Am. Compl. ¶ 10.)  While the amount in controversy

is determined through consideration of the good faith allegations of the complaint at the time it was

filed, see State Farm Mut. Auto. Ins. Co. v. Powell, 87 F.3d 93, 97 (3d Cir. 1996); Spectacor Mgt.

Group v. Brown, 131 F.3d 120, 122 (3d Cir. 1977), damages accruing in the future are properly

counted against the jurisdictional amount if "the right to future payments . . . will be adjudged in the

present suit." Broglie v. MacKay-Smith, 541 F.2d 453, 455 (4th Cir. 1976); see also Dardovitch v.

Haltzman, 190 F.3d 125, 135 (3d Cir. 1997) ("Where . . . a suit is brought to establish directly the

right to receive any payments because the . . .  defendant has repudiated that right entirely . . . the

amount in controversy is the entire amount that may ever come due."); Chabal v. Regan, 822 F.2d

349, 356 (3d Cir. 1987) (considering back pay accruing after the filing of complaint to determine

whether district court had jurisdiction); Foley v. Devaney, 528 F.2d 888, 889 n.1 (3d Cir. 1976).

In this case, the damages sought include the right to overtime payments since the filing of

the complaint and in the future.  This is the norm in employment cases in which backpay and

frontpay are routinely awarded.  Since the right to collect damages accruing after the filing of the

complaint will necessarily be adjudicated in this case, these damages are properly counted against

the amount in controversy.

In its briefing, defendant utilizes a liability period of four years, which includes two years prior to suit measured by the statute of limitations and two years from the date of the filing of the complaint. The use of a four year liability period is appropriate. In the District of New Jersey the median time from filing to trial for a civil case was thirty-three (33) months in 2006. See Administrative Office of the United States Courts, Judicial Caseload Profile, http://www.uscourts.gov/cgi-bin/cmsd2006.pl (as visited October 9, 2007). The complaint was filed on February 23, 2007. Using the two year statute of limitations before that date and adding thirty-three (33) months after that date is more than four years. Conservatively, plaintiff is seeking damages for two years prior to the complaint and the time from the filing date to trial – hence the four years. Plaintiff does not expressly challenge defendant's liability period in his reply or sur-reply.

### e. Attorney's Fees

Attorney's fees are appropriately counted toward the amount in controversy if they are available to a successful plaintiff pursuant to the underlying statute. Suber, 104 F.3d at 585. This applies to cases removed under CAFA. See Lowdermilk v. U.S. Bank National Assoc., 479 F.3d 994,1000 (9th Cir. 2007); Frazier v. Pioneer Americas, LLC, 455 F.3d 542, 545 (5th Cir. 2006). In this case, the underlying statute allows for the recovery of "costs and . . . reasonable attorney's fees." N.J.S.A. 34:11-56a25.

It is not possible to determine with precision the amount of attorneys' fees plaintiff may recover. A reasonable approach, proposed by defendant, is to look to cases from this district arising under similar facts. This reveals that the median in the Third Circuit for attorneys' fee awards is

19

approximately thirty percent (30%) of a common fund.  See, e.g., Lenahan v. Sears, Roebuck & Co., No. 02-45, 2006 WL 2085282, at *21 (D.N.J. July 24, 2006) (attorneys' fee awards regularly account for thirty percent of the common fund); In re General Motors Corp. Pick Up Truck Fuel Tank Products Liab. Litig., 55 F.3d 768, 822 (3d Cir. 1995) (noting attorney fee awards ranging from nineteen percent to forty-five percent); In re Safety Components, Inc., Sec. Litig., 166 F. Supp. 2d 72, 101-02 (D.N.J. 2001).  As noted in Lenahan, "attorneys' fees of approximately 30 percent of the common fund are also regularly awarded in labor and employment law class actions."  2006 WL 2085282, at *21.

Defendant argues that $1.5 million in attorneys' fees should be used in calculating the amount in controversy.  (Def.'s Br. 28.)  According to defendant, this an appropriate number based on its calculation of 30% of a $5,000,000 recovery. (Id.)  While this is a plausible approach, a more precise method would be to multiply whatever is determined to be a fair estimation of the total amount of unpaid overtime by thirty percent (30%).

### f.   **Penalties**

The amended complaint also seeks to recover "penalties available under applicable law." (Am. Compl. p. 8.)  Specifically, plaintiff has alleged that defendant has failed to comply with the record keeping requirements of the NJWHL, which provides for administrative penalties.  Because the Court must take plaintiff's allegations as true, Steel Valley Authority, 809 F.2d at 1010, defendant has shown that it faces potential exposure to civil penalties under the NJWHL.

At least one circuit court of appeals (in a case removed to federal court under CAFA) has indicated that civil penalties may be considered when calculating CAFA's amount in controversy requirement.  See Babsa v. LensCrafters, Inc., 07-55880, ___ F.3d ____, 2007 WL 2331949, at *2

(9th Cir. August 16, 2007).  Plaintiff has not expressly challenged defendant's right to include civil penalties in its calculation of the amount in controversy.

 The NJWHL provides that "the commissioner [is authorized] to assess and collect administrative penalties" for any violation of the act.  N.J.S.A. 34:11-56a22; see also N.J.A.C. 12:56-1.3(a).  The statutory scheme provides for a penalty of not more than $250 for a first violation and not less than $25 nor more than $500 for the second and each subsequent violation.  See N.J.A.C. 12:56-1.3(a).  Plaintiff has alleged a multitude of violations extending "[t]hroughout the statute of limitations period covered by these claims."  (Am Compl. ¶10.)  If the Court were to apply the lowest potential penalty of twenty-five dollars ($25) a day to three hundred (300) class members for four years (208 weeks) defendant would be subject to at least $1,560,000 in potential penalties.  Applying even more conservative estimates of two hundred (200) class members and two years (104 weeks) results in $520,000 in penalties ($25 x 200 x 104).

 The Court has substantial doubt as to plaintiff's ability to recover administrative penalties for violations of the NJWHL.  See Genarie, 2006 WL 436733, at *18.  However, the Court "should not consider in its jurisdictional inquiry the legal sufficiency of [plaintiff's] claims or whether the legal theory advanced by the plaintiffs is probably unsound. . . ."  Suber, 104 F.3d at 583.  Therefore, applying minimal scrutiny (and noting that plaintiff has not argued against their inclusion) penalties should be included in the amount in controversy calculation.

## G.   Defendant Has Met Its Burden to a Legal Certainty

 Defendant has provided "all of the information available to make . . . a determination . . . that the plaintiff's claim[] in all likelihood exceeds $5 million.'"  Reibstein v. Continental Tire North America, No. 07-302, 2007 WL 1030486, at *2 (E.D. Pa. April 2, 2007) (quoting Morgan, 471 F.3d

at 475). Indeed, as the calculations below reflect, defendant has shown that the amount in controversy well exceeds $5,000,000.

The following numbers are supported by the allegations in the amended complaint: (1) an average rate of $35.58 based on an average yearly salary of $74,000 (which is <u>less</u> than plaintiff's asserted $80,000 yearly average); (2) a time and a half overtime rate utilizing the standard workweek method; (3) an average of three (3) hours of unpaid overtime a week; (4) three hundred (300) class members; and (5) a four year liability period. This results in a total claim of $9,990,864 for unpaid overtime ($35.58 x 1.5 x 3 x 300 x 208). In addition, attorneys' fees of approximately $3,000,000 should also be added ($9,990,864 x average attorney fee recovery of 30%). Thus, the amount in controversy could exceed $12,000,000 without consideration of penalties. Changing some of the challenged numbers used in the calculation does not alter the result. For example:

– Using a smaller class of 158 individuals continues to result in a claim for unpaid overtime alone in excess of a $5,000,000 ($35.58 x 1.5 x 3 x 158 x 208 = $5,261,855). Adding attorneys' fees and civil penalties to the calculation further exceeds CAFA's statutory amount in controversy requirement.

– Limiting the liability period to two years results in approximately $5,000,000 in unpaid overtime ($35.58 x 1.5 x 3 x 300 x 104). Adding together attorneys' fees (approximately $1,400,000 – 30% of unpaid overtime) and penalties, the amount in controversy surpasses the jurisdictional threshold.

22

## <u>CONCLUSION</u>

In sum, the Court is satisfied from the evidence presented that the amount in controversy far exceeds $5,000,000.   Moreover, it is certainly not legally impossible for plaintiff to recover $5,000,000.  <u>Nyguen</u>, 2007 WL 2461815, at *1.

For the foregoing reasons, it is respectfully recommended that plaintiff's motion to remand be **denied**.

Dated: October 11, 2007

   /s/  Mark Falk
**MARK FALK**
**United States Magistrate Judge**

Orig.:  Clerk of the Court
cc:      Hon. Jose L. Linares, U.S.D.J.
           All Parties
           File

23